CA NO. 22-50045

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

VICTOR MANUEL RAMIREZ,

        Defendant-Appellant.

DC NO. 8:20-cr-00134-SVW-1

---

**APPELLANT'S OPENING BRIEF**

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

HONORABLE STEPHEN V. WILSON
United States District Judge

CUAUHTEMOC ORTEGA
Federal Public Defender
DEBORAH E. GONZALEZ
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081
Email: Deborah_Gonzalez@fd.org
Attorneys for Defendant-Appellant

### TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ...................................................................1

II.   QUESTIONS PRESENTED ...........................................3

III.  STATEMENT OF THE CASE .........................................4

     A.    Statement of Jurisdiction .............................................4

     B.    Course of Proceedings..................................................4

     C.    Custody Status ................................................................5

IV.  STATEMENT OF FACTS ................................................5

     A.    Detective Buchanan Unlawfully Prolongs What Should Be an Ordinary Traffic Stop to Ask about Mr. Ramirez's Probation or Parole Status ..................................................................5

     B.    Mr. Ramirez Challenges his Unlawfully Prolonged Stop, but the District Court Denies the Motion ........................6

     C.    Mr. Ramirez Pleads Guilty and Is Sentenced....................................11

V.    SUMMARY OF ARGUMENT ....................................12

VI.  ARGUMENT....................................................................14

     A.    The District Court Erred in Denying the Motion to Suppress ............14

          1.    Standard of Review................................................14

          2.    Analysis....................................................................14

     B.    This Court Should Remand to the District Court to Conform the Written Judgment to the Oral Pronouncement of Sentence. ...............26

          1.    Standard of Review................................................26

          2.    Analysis....................................................................27

VII.  CONCLUSION................................................................29

## <u>TABLE OF CONTENTS</u>

**Page(s)**

CERTIFICATE OF RELATED CASES ..................................................................30

CERTIFICATE OF COMPLIANCE ........................................................................31

## TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*Amanuel v. Soares*,
   No. 13-cv-5258-NC, 2015 WL 3523173 (N.D. Cal. June 3, 2015) ...................15

*Illinois v. Caballes*,
   543 U.S. 405 (2005).....................................................................................14

*Matthews v. Las Vegas Metropolitan Police Dep't*,
   Case No. 2:18-cv-00231-RFB-DJA, 2021 WL 356235 (D. Nev.
   Feb. 1, 2021) .............................................................................................21

*Pennsylvania v. Mimms*,
   434 U.S. 106 (1977)...............................................................................12, 15

*Rodriguez v. Marin*,
   909 F.3d 252 (9th Cir. 2018) ...............................................................24

*Rodriguez v. United States*,
   575 U.S. 348 (2015)...............................................................................*passim*

*Samson v. California*,
   547 U.S. 843 (2006)...............................................................................20

*Terry v. Ohio*,
   392 U.S. 1 (1968)...................................................................................25

*United States v. Cortez*,
   449 U.S. 411 (1981)...............................................................................25

*United States v. Diaz-Juarez*,
   299 F.3d 1138 (9th Cir. 2002) ...............................................................25

*United States v. Evans*,
   786 F.3d 779 (9th Cir. 2015) .......................................................13, 16, 17, 19

*United States v. Fifield*,
   432 F.3d 1056 (9th Cir. 2005) ...............................................................27

*United States v. Gould*,
   No. 21-cr-00475-JSW-1, 2022 WL 3226974 (N.D. Cal. Aug. 10,
   2022) ....................................................................................................14

TABLE OF AUTHORITIES

Page(s)

**Federal Cases (Cont.)**

*United States v. Hicks*,
    455 F.2d 329 (9th Cir. 1972) (per curiam) ........................................26

*United States v. Hoover*,
    Case No. 2:20-cr-00273-JCM-BNW, 2022 WL 6239512 (D. Nev.
    July 13, 2022) ........................................14

*United States v. Hunter*,
    554 F. Supp. 3d 632 (E.D. Pa. 2021)........................................21

*United States v. Hylton*,
    30 F.4th 842 (9th Cir. 2022) ........................................12, 18

*United States v. Jones*,
    696 F.3d 932 (9th Cir. 2012) ........................................28

*United States v. Landeros*,
    913 F.3d 862 (9th Cir. 2019) ........................................*passim*

*United States v. Lewis*,
    No. 220CR00197RFBBRW, 2022 WL 834804 (D. Nev. Mar. 21,
    2022) ........................................15

*United States v. Mati*,
    466 F. Supp. 3d 1046 (N.D. Cal. 2020)........................................14

*United States v. Montero-Camargo*,
    208 F.3d 1122 (9th Cir. 2000) (en banc) ........................................24

*United States v. Munoz-Dela Rosa*,
    495 F.2d 253 (9th Cir. 1974) ........................................27

*United States v. Odom*,
    No. 21-cr-00259-JST-1, 588 F. Supp. 3d 1032 (N.D. Cal. 2022) ....................14

*United States v. Reed*,
    15 F.3d 928 (9th Cir. 1994) ........................................14

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases (Cont.)**

*United States v. Taylor*,
Case No. 21-cr-00242-YGR, 2022 WL 5125182 (N.D. Cal. Oct. 4, 2022) ..........................................................................................15

*United States v. Ward*,
16-cr-00485-JST-1, 2017 WL 1549474 (N.D. Cal. May 1, 2017) ...................15

**Federal Statutes**

18 U.S.C. § 922(g)(1)........................................................................4

18 U.S.C. § 3231..............................................................................4

28 U.S.C. § 1291..............................................................................4

**State Statute**

Cal. Penal Code § 3067(d)................................................................20

**Federal Rule**

Fed. R. Crim. P. 51(b)......................................................................27

**U.S. Constitution**

U.S. Const. amend. IV .....................................................................14

**Other Authorities**

Bridget A. Fahey, *Data Federalism*, 135 Harv. L. Rev. 1007, 1022 (2022).........................................................................................21

David D. Kirkpatrick, et al., *Why Many Police Traffic Stops Turn Deadly*, New York Times, (Nov. 30, 2021) https://www.nytimes.com/2021/10/31/us/police-traffic-stops-killings.html .....................................................................................22

Jordan Blair Woods, *Policing, Danger Narratives, and Routine Traffic Stops*, 117 Mich. L. Rev. 635, 682-83 (2019) .........................................22

# I.  INTRODUCTION

The Fourth Amendment prohibits police officers from using ordinary traffic stops as fishing expeditions into generalized criminality.  When an officer pulls someone over for a traffic violation, the subsequent investigation must adhere to the traffic-related reason for the stop.  Along the way, the officer may take negligibly burdensome precautions to protect his safety.  For example, the officer may order a driver to step out of the car so as to limit the possibility that the driver may assault the officer with a weapon from inside the car.  The officer may run a criminal history check on the driver to see whether he has a history of violence, weapon possession, or resisting arrest, so he knows whether to take additional precautions when interacting with the driver.  But the officer-safety exception is a limited one that means what it says: steps taken during a traffic stop must actually have had the potential to protect the officer from harm in order to fit under the exception.  A police officer cannot skirt the Fourth Amendment by claiming he posed questions in the name of his safety as a roundabout way of turning an ordinary traffic stop into a search for generalized criminality when the questions could not actually have helped him stay safe.  Otherwise, this limited exception would easily swallow the rule.

And what better way to attempt to skirt the Fourth Amendment like this than by asking the driver of a car whether he is on probation or parole?  These forms of

supervision often include sweeping conditions that permit police officers to search a person and his car with little or no suspicion of wrongdoing. An affirmative answer to the question of whether a driver is on probation or parole therefore has the ability to turn an ordinary traffic stop, limited in both scope and time, into *carte blanche* to search the driver and his car, top to bottom, without any suspicion he has done something more serious than run a stop sign. Indeed, the Santa Ana Police Department detective who did just that in this case essentially admitted that it is his practice to ask about parole on certain occasions because he knows it will give him permission to search a person's car without suspicion the person has engaged in criminal conduct. And even when the detective later claimed—*after* speaking with the prosecutor, *after* the defense filed a motion to suppress—that he asked about probation or parole also in the name of officer safety, he could not articulate a cogent reason why that question helped him protect himself during the traffic stop in this case.

The reason the detective couldn't articulate how asking a driver if he is on probation or parole helps the detective protect himself during a traffic stop is because it doesn't. Knowing whether a person is on probation or parole does not provide officers with information useful for protecting themselves. The answer to that question is akin to knowing a passenger's name, whether there are drugs in a vehicle, or whether a felon is properly registered to his address—information this

Court and the Supreme Court have held does not advance officer safety. It is not like asking a driver to step out of the car or running his criminal history, both of which have rational, articulable ties to officer safety. For these reasons, the district court erred in denying Mr. Ramirez's motion to suppress. This Court should remand with instructions to vacate Mr. Ramirez's conviction and order that the firearm and all other evidence obtained as a result of the unlawful prolongation of the traffic stop be suppressed.

Should this Court affirm the denial of the suppression motion, however, it must still remand the case with instructions to conform the written Judgment and Commitment Order to the oral pronouncement of sentence, as they are in conflict with respect to two special conditions of supervised release.

## II. QUESTIONS PRESENTED

1. Did the district court err in concluding that a police officer is justified in asking the driver of a vehicle stopped for a traffic offense whether he is on probation or parole in the name of officer safety, where the answer to that question does not provide information that assists the officer in protecting himself?

2. Must the case be remanded so that the written Judgment and Commitment can be corrected to conform to the district court's oral pronouncement of sentence?

### III.  STATEMENT OF THE CASE

**A.  Statement of Jurisdiction**

Appellant Victor Manuel Ramirez appeals from a final judgment rendered by the Honorable Stephen V. Wilson, United States District Judge.  On March 4, 2022, Judge Wilson sentenced Mr. Ramirez to a 63-month term of imprisonment, followed by a three-year term of supervised release.  (ER-23.)  The court entered judgment the same day.  (*Id*.)  Mr. Ramirez filed a timely notice of appeal on March 8, 2022.  (ER-289.)  The district court had jurisdiction pursuant to 18 U.S.C. § 3231 and this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

**B.  Course of Proceedings**

On September 16, 2020, Mr. Ramirez was charged in an indictment with being a prohibited person in possession of a firearm, in violation of 18 U.S.C. Section 922(g)(1).  (ER-28.)  He moved to suppress the firearm and all evidence stemming from his unlawful seizure.  (ER-32.)  After an evidentiary hearing, the district court denied the motion in a written order.  (ER-2-13.)  Mr. Ramirez pleaded guilty to the offense pursuant to a conditional plea agreement that reserved his right to appeal the denial of the motion to suppress.  (ER-272.)  The district court imposed a 63-month sentence of imprisonment, to be followed by a three-year term of supervised release.  (ER-23.)  This timely appeal follows.

4

## C.    Custody Status

Mr. Ramirez is in Bureau of Prisons custody serving the sentence imposed in this case.  His expected release date is February 16, 2025.

## IV.  STATEMENT OF FACTS

### A.    Detective Buchanan Unlawfully Prolongs What Should Be an Ordinary Traffic Stop to Ask about Mr. Ramirez's Probation or Parole Status

On July 18, 2020, Mr. Ramirez was driving in Santa Ana, California, when Santa Ana Police Department Detective Dorin Buchanan stopped him for purported traffic violations.  (ER-2.)  The district court credited Detective Buchanan's testimony that, prior to pulling Mr. Ramirez over, Detective Buchanan recognized Mr. Ramirez as a gang member and former parolee from contacts over two years earlier, although he did not remember details like Mr. Ramirez's name or the name of the gang.  (ER-9; ER-171.)

Upon making contact with Mr. Ramirez, Detective Buchanan did not ask about the purported traffic violations that led to the stop; indeed, he would at no point during their interaction ask about them or cite Mr. Ramirez for violating any traffic laws.  Instead, Detective Buchanan's first question was whether Mr. Ramirez was on "probation or parole."  (Exh. D at 00:13.)[1]  Mr. Ramirez

---

[1] "Exh. D" refers to a video recording submitted as Exhibit D to the defense motion to suppress.  (*See* ER-57.)  That recording, along with Exhibit 1 and

responded that he was on parole. (*Id.*) Detective Buchanan then asked Mr.

Ramirez what he was on parole for, when the last time was that he had checked in

with his probation officer, how he checked in with her, and where he lived. (*Id.* at

00:04-00:27.) He asked Mr. Ramirez whose car he was driving, what he was doing

in the area, and whether he had anything illegal in the car. (*Id.* at 00:35-00:52.)

Then, he asked Mr. Ramirez if he had a gun in the car. (*Id.* at 01:32.) After Mr.

Ramirez told Detective Buchanan that he had a gun in the glovebox, another

officer searched the car and found the gun. Detective Buchanan arrested Mr.

Ramirez and the charge in this case followed.

## B.     Mr. Ramirez Challenges his Unlawfully Prolonged Stop, but the District Court Denies the Motion

Mr. Ramirez moved to suppress the firearm and all evidence stemming from

his unlawfully prolonged seizure. He argued that there was no valid basis for the

traffic stop because he had not committed any traffic offenses. (ER-41) He also

argued that even if there had been a valid basis for the stop, Detective Buchanan

unlawfully prolonged it by asking about Mr. Ramirez's probation or parole status

and by positing the other questions that were unrelated to the purported traffic

violations. (ER-42.)

---

Exhibit 4 to the government's opposition to the motion to suppress are the subject
of an unopposed Motion to Transmit Physical and Documentary Exhibits filed
concurrently with this brief.

The government opposed the motion. It argued that Detective Buchanan had had reasonable suspicion to stop Mr. Ramirez after observing him commit several traffic violations. (ER-74.) It argued that the detective's question about probation or parole had not prolonged the stop because it did not take much time to ask or answer. Nor, in the government's view, was the question unrelated to the mission of the stop because it supposedly advanced officer safety. (ER-84-85.) In the alternative, the government argued, Detective Buchanan had had independent reasonable suspicion to ask Mr. Ramirez the question. (ER-85.)

Detective Buchanan submitted a declaration in support of the opposition. In that declaration, he did not claim that he had asked Mr. Ramirez about his probation or parole status for officer safety. Instead, he explained that he asked the question because it might permit him to parlay the traffic stop into a search of the car absent any suspicion of wrongdoing. Specifically, he said it is his "practice" to try to confirm a person's parole status when interacting with those he knows have previously been on parole. (ER-91.) In the next sentence he explained that he knows that people on parole are "subject to search and seizure by any law enforcement officer, at any time of the day or night, without a warrant, reasonable suspicion, or probable cause." (*Id.*)

In reply, Mr. Ramirez reiterated his position that he had not committed any traffic offenses. He disputed the claim that Detective Buchanan had recognized

him as a gang member and parolee prior to stopping his car. (ER-119-120.) And he explained that the questioning about his probation or parole status was not fairly characterized as part of the mission of the traffic stop, including as a measure aimed at officer safety. (ER-121-122.)

The district court held an evidentiary hearing at which Detective Buchanan testified. Regarding the probation or parole question, Detective Buchanan testified that he asked it "for officer safety and to confirm [his] suspicion that [Mr. Ramirez] was actively on parole." (ER-235.) When asked how a person being on parole relates to officer safety, Detective Buchanan responded:

> Generally, someone who is on parole has been to prison. They have been released from the prison systems. . . . So they had previously violated some sort of law . . . [been] found guilty, convicted, sentenced to a prison term, released, and whatever that crime was could be a violent crime, a weapons possession or something of that nature.

(ER-235-36.) He agreed with the statement that he takes "additional precautions" with a person he knows to be on parole in terms of officer safety. (ER-236.) But he did not explain what those additional precautions would be. (*Id.*) He testified that he wants to know whether a person is on parole "[b]ecause of their prior offense and whether or not they are subject to search and seizure." (ER-237.) He did not cite any safety concerns with a person on probation.

After the evidentiary hearing, the district court issued a written order denying the motion. In its order, the court first held that Detective Buchanan had

had probable cause to conduct the traffic stop. (ER-3-6.) This appeal does not challenge that holding or its related findings of fact.

The court next held that Detective Buchanan's questioning had not unlawfully prolonged the stop because it was "justified by an interest in officer safety" and therefore fell within the scope of the stop's mission. (ER-7.) In reaching that holding, the court framed the detective's question as one about parole status only, ignoring the actual question Detective Buchanan had asked, which was whether Mr. Ramirez was on either "probation or parole."[2] (*Compare* ER-6-14, *with* Exh. D at 00:13.) Having mischaracterized the question, the court then concluded that it was justified because "a driver's parole status is relevant to officer safety." (ER-9.) As a way of explaining why a driver's parole status is relevant to officer safety, the court adopted Detective Buchanan's vague explanation, writing that "someone who is on parole has been to prison and then been released from the prison system. In other words, that person has previously violated *some sort* of law and been sentenced to a prison term, and *whatever* crime they committed *could* have been a violent crime, an unlawful weapons possession, or something of that nature." (*Id.* (emphases added).)

_____

[2] Indeed, nowhere does the order address purported safety concerns related to an individual on probation. Its sole use of the word probation comes in a quotation from another case in a footnote. (ER-11.)

Citing to the fact that the area where the stop occurred was a high-crime and high-gang area and crediting that Detective Buchanan had recognized Mr. Ramirez as a gang member and former parolee before the stop, the court reasoned that "confirming at the outset of the traffic stop that Ramirez was the parolee he had previously encountered allowed Officer Buchanan to better assess the danger posed by the traffic stop." (ER-9.) The court also was persuaded by the fact that Detective Buchanan had asked the question at the outset of the stop because this period is when officer safety concerns are at their "zenith." (ER-10.)

The court did not address the government's alternative argument that Detective Buchanan's question was supported by independent reasonable suspicion. (*See generally* ER-6-13.) Nor did the court explicitly address the government's argument that the question did not unlawfully prolong the stop because it was brief. However, the court implicitly—and correctly—held against the government on that matter when it noted that "the amount of time that the stop was prolonged is irrelevant; rather, the question is whether 'any time' is 'added' to the stop for purposes unrelated to the mission of the traffic stop. (ER-7 (quoting *United States v. Landeros*, 913 F.3d 862, 867 (9th Cir. 2019).) *See also Landeros*, 913 F.3d at 866 (noting that *Rodriguez v. United States*, 575 U.S. 348, 355 (2015), "requires independent, reasonable suspicion if the additional investigation adds any time to a traffic stop" (internal alteration, quotation marks, and citation omitted)).

10

## C. Mr. Ramirez Pleads Guilty and Is Sentenced

After the district court denied his motion, Mr. Ramirez entered a guilty plea pursuant to a plea agreement. (ER-271.) His plea agreement reserved his right to appeal the denial of the motion to suppress. (ER-272.) Mr. Ramirez's case proceeded to sentencing, at which time the court sentenced him to 63 months imprisonment, to be followed by three years of supervised release. (ER-23.) At the sentencing hearing, the court ordered several special conditions of supervised release, including that Mr. Ramirez "participate in outpatient substance abuse treatment and counseling programs, as directed by the probation officer." (ER-19.) It also ordered Mr. Ramirez not to "associate with anyone known to him to be a member of the Alley Boys gang or other participants in the Alley Boy gang's -- Alley Boys gang's criminal activities, with the exception of family members." (ER-19.)

In the subsequently issued Judgment and Commitment Order, however, the court added terms to these two special conditions. First, the court directed that Mr. Ramirez "participate in an outpatient substance abuse treatment and counseling program *that includes urinalysis, breath or sweat patch testing,* as directed by the Probation Officer. *The defendant shall abstain from using alcohol and illicit drugs, and from abusing prescription medications during the period of*

11

*supervision.*" (ER-23 (emphasis added).) Second, the court ordered that Mr. Ramirez

> shall not associate with anyone known to [him] to be a member of the Alley Boys Gang and others known to [him] to be participants in the Alley Boys Gang's criminal activities, with the exception of [his] family members. *The defendant may not wear, display, use or possess any gang insignias, emblems, badges, buttons, caps, hats, jackets, shoes, or any other clothing that defendant knows evidence affiliation with the Alley Boys Gang, and may not display any signs or gestures that defendant knows evidence affiliation with the Alley Boys Gang.*

(*Id.* (emphasis added).) This appeal followed.

## V. SUMMARY OF ARGUMENT

This Court should remand with instructions to vacate Mr. Ramirez's conviction and to order all evidence obtained as a result of the unlawfully prolonged stop suppressed. Absent reasonable suspicion of some other crime, police officers may only investigate the mission of a traffic stop during the stop. They may not use a stop to attempt to detect crime in general. The mission of a traffic stop encompasses officer safety during that stop. However, precedent limits the officer-safety justification to those questions and actions that demonstrably serve to protect an officer's physical safety, like asking someone to get out of a car, *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), or running a criminal history search to check for a history of violence, *United States v. Hylton*, 30 F.4th 842 (9th Cir. 2022).

Asking the driver of a car stopped for a traffic offense whether he is on probation or parole does not further officer safety because the answer to that question does not demonstrably serve to assist an officer in protecting himself: people can be on probation and parole for offenses that are minor, that are decades old, and that have nothing to do with weapons, violence, or resisting arrest. An affirmative response to the question, therefore, does not inform police officers whether that person poses a specific risk of danger to them. The question is more akin to those police forays into general crime detection that this Court and the Supreme Court have held are not justified under the officer-safety exception: knowing whether a felon has properly registered his address, *United States v. Evans*, 786 F.3d 779 (9th Cir. 2015), knowing the name of a passenger, *Landeros*, 913 F.3d at 862, or knowing whether there are drugs in a car, *Rodriguez*, 575 U.S. at 355. That an inquiry about a person's probation or parole status may be less burdensome than a criminal history check and that it may be made at a time when safety concerns for officers are heightened are immaterial here because they do not change the fact that the answer to the question does not provide useful information to an officer seeking to protecting himself.

Additionally, this Court should remand for correction of the supervised release conditions in the written judgment, which differ in two respects from the controlling oral pronouncement of sentence.

## VI. ARGUMENT

## A.    The District Court Erred in Denying the Motion to Suppress

### 1.    Standard of Review

This Court reviews *de novo* the denial of a motion to suppress.  It does so accepting the district court's factual findings so long as they are not clearly erroneous.  *United States v. Reed*, 15 F.3d 928, 930 (9th Cir. 1994).

### 2.    Analysis

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."  *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).  Whether a police officer unlawfully prolongs a traffic stop by asking a driver if he is on probation or parole appears to be an issue of first impression in this Circuit, and the others.  However—as the overwhelming weight of district courts in this circuit has recognized[3]—binding

---

[3] *E.g., United States v. Odom*, No. 21-cr-00259-JST-1, 588 F. Supp. 3d 1032 (N.D. Cal. 2022) (granting motion to suppress because officer's question about whether driver was on probation or parole was not within the mission of the traffic stop); *United States v. Mati*, 466 F. Supp. 3d 1046 (N.D. Cal. 2020) (same); *United States v. Gould*, No. 21-cr-00475-JSW-1, 2022 WL 3226974, at *4 (N.D. Cal. Aug. 10, 2022) (unpublished) (same); *United States v. Hoover*, Case No. 2:20-cr-

14

precedent demonstrates that the question unlawfully prolongs a traffic stop because it falls outside the mission of the stop.

In *Rodriguez*, the Supreme Court defined the mission of a traffic stop as "address[ing] the traffic violation that warranted the stop . . . and attend[ing] to related safety concerns." 575 U.S. at 354. The Court cautioned that "[o]n-scene investigation into other crimes[] [ ] detours from that mission. So too do safety precautions taken in order to facilitate such detours." *Id.* at 356.

Regarding "related safety concerns," the Court explained that "an officer *may* need to take certain negligibly burdensome precautions in order to complete his mission safely." *Id.* (emphasis added). Citing to *Mimms*, the Court noted that it previously had held that ordering the driver of a vehicle to exit the vehicle during the traffic stop furthered the government's legitimate interest in officer safety. *Id.*; *see also Mimms*, 434 U.S. at 111 ("Establishing a face-to-face confrontation diminishes the possibility, otherwise substantial, that the driver can make

---

00273-JCM-BNW, 2022 WL 6239512 (D. Nev. July 13, 2022) (unpublished) (same); *United States v. Lewis*, No. 220CR00197RFBBRW, 2022 WL 834804, at *3 (D. Nev. Mar. 21, 2022) (unpublished) (same); *United States v. Ward*, 16-cr-00485-JST-1, 2017 WL 1549474 (N.D. Cal. May 1, 2017) (unpublished) (same); *Amanuel v. Soares*, No. 13-cv-5258-NC, 2015 WL 3523173 (N.D. Cal. June 3, 2015) (unpublished) (same); *see also United States v. Taylor*, Case No. 21-cr-00242-YGR, 2022 WL 5125182, at *6 (N.D. Cal. Oct. 4, 2022) (unpublished) (holding that inquiry into passenger's probation/parole status did not further officer safety and was instead "inversely related to officer safety").

unobserved movements; this, in turn, reduces the likelihood that the officer will be the victim of an assault.").

The law enforcement "precaution" in *Rodriguez*, by contrast, was a dog sniff that occurred after the traffic stop was completed: the officer already had investigated the traffic violation, issued a written warning to the driver, and returned documents to the vehicle occupants. *Rodriguez*, 575 U.S. at 351-52. Detaining the driver longer in an endeavor to detect drug trafficking was not justified as incident to the stop nor to further officer safety. *Id*. at 356-57. The Court stressed, moreover, that the critical question was not at what point in the stop the prolongation occurred or whether the prolongation was slight, but rather whether the unjustified conduct "adds time to" the stop. *Id.* at 357.

Following in the footsteps of *Mimms* and *Rodriguez*, this Court has made clear that officers cannot attempt to use safety concerns as a blank check to investigate generalized criminality during traffic stops by taking steps that don't, in fact, help them protect themselves from harm. In *Evans*, a police officer extended a traffic stop by running an "ex-felon registration check"; an inquiry into whether the driver had complied with a Nevada law requiring felons to register their current address. The officer did so after the traffic stop was over. By then, he had run the car and driver and found they both had clean records and he had told the driver that he would not cite him. *Id.* at 782-83, 787. Holding that the check

16

unconstitutionally prolonged the stop, this Court explained that it was unrelated to the mission of the stop because it did not address the traffic violation and was not an attendant safety precaution. *Id.* With respect to the safety-precaution justification, the Court concluded, *inter alia*, that the check "in no way advanced officer safety." *Id.* at 787-88. It was instead a measure aimed at detecting evidence of ordinary criminal wrongdoing. *Id.* Moreover, the Court noted that the officer had asked the question at a time when it would have been safer letting the driver go rather than prolonging the encounter. *Id.* at 787.

In *Landeros*, this Court again recognized that purported safety precautions are only justified under the officer-safety exception when they can actually further the goal of officer safety. There, towards the beginning of a traffic stop, a police officer demanded that a passenger provide his identification. 913 F.3d at 865. This Court held that the officer's demand did not further officer safety because "knowing [the passenger's] name would not have made the officers any safer." *Id.* at 868. Just knowing a person's name does not allow a police officer to understand if he should take extra precautions to protect himself because it tells him nothing about the risk of harm that person might pose to the officer. The *Landeros* Court also held that "extending the stop" at the beginning, even in this brief way, "prolong[ed] the officers' exposure to [the passenger], [and] was, if anything, 'inversely related to officer safety.'" *Id.* (quoting *Evans*, 786 F.3d at 787).

17

On the permissible end of the constitutional scale, this Court recently concluded that an officer was justified in running a criminal history search during a traffic stop in the name of officer safety because that search can reveal information useful to a police officer in protecting himself. *See Hylton,* 30 F.4th at 847-48. Notably, in comparing the facts before it with those before the *Evans* Court, the *Hylton* Court explained that "[w]hether a felon is properly registered is less related to officer safety than whether someone is a felon at all." *Hylton*, 30 F.4th at 847-48. That is why, the Court reasoned, "a felon registration check is 'a measure aimed at detecting evidence of ordinary criminal wrongdoing,' but a criminal history check is supported by an 'officer safety justification.'" *Id.*

Under this framework, Detective Buchanan's question to Mr. Ramirez about his probation or parole status was not justified as a safety precaution because Mr. Ramirez's response could not have aided Detective Buchanan in avoiding harm by Mr. Ramirez. A person can be on probation or parole in California for many types of crimes including misdemeanors, and a perusal through the California Penal Code demonstrates that the great majority of California crimes are non-violent, non-weapons offenses. Simply knowing whether a driver is on probation or parole, therefore, does not alert a police officer to any heightened risk of violence that person may pose to the officer.

18

It is for this reason that, contrary to the district court's reasoning, knowing whether Mr. Ramirez was on probation or parole would not have alerted Detective Buchanan to any of the potential safety issues a criminal history check would have alerted him to.[4]  For example, it would not have told him whether Mr. Ramirez had a prior history of violence, resisting arrest, or weapons possession.  It would not have told him whether Mr. Ramirez had a lengthy criminal history.  It would not have told him whether Mr. Ramirez's prior crimes were serious felonies or relatively minor misdemeanors.  It would not even have told him whether Mr. Ramirez had recent criminal history, as some people are paroled decades after their conviction.

Learning whether a person is currently on probation or parole is more akin to knowing whether a felon is properly registered, or the name of a passenger, or whether there are drugs in a car, all of which the Supreme Court and this Court have recognized are insufficiently related to officer safety and therefore not justified under the officer-safety exception.  *See Rodriguez*, 575 U.S. at 355; *Evans*, 786 F.3d at 779; *Landeros*, 913 F.3d at 862.  Questioning a motorist about his probation or parole status, like the actions at issue in these cases, is a measure

---

[4] As noted, *supra*, in undertaking its analysis, the Court ignored the question Detective Buchanan actually asked, which was whether Mr. Ramirez was on "*probation or* parole."  (*Compare* ER-6-14, *with* Exh. D at 00:13.)

aimed at detecting general criminality. It is a way for a police officer to attempt to obtain the unfettered ability to search a car stopped only for a traffic violation without any independent suspicion of wrongdoing.

The district court gave two reasons for denying the motion to suppress that are irrelevant to the government's problem in this case, which is that the question Detective Buchanan asked did not have the potential to further officer safety. First, the court reasoned that inquiring about parole is less "intrusive" than a full criminal history check. (ER-8.) The flaw in this reasoning is that just because the narrowness of a question might mean it can be classified as negligibly burdensome[5] does not mean the question therefore is justified in the name of officer safety. The officer-safety justification also requires that the proffered

---

[5] Asking a driver whether he is on probation or parole may be negligibly burdensome in the sense that the question can be asked and answered in a short amount of time. However, it is burdensome in a privacy sense in that it may reveal that a person is subject to sweeping search times about which an officer conducting an ordinary traffic stop might otherwise not have occasion to learn. *Cf. Samson v. California*, 547 U.S. 843, 856 (2006) (noting that probationers and parolees, despite their lower privacy interests, are not allowed to be seized in ways that are arbitrary, capricious, or harassing); Cal. Pen. Code § 3067(d) ("It is not the intent of the Legislature to authorize law enforcement officers to conduct searches for the sole purpose of harassment"). Indeed, in this case, by inquiring into Mr. Ramirez's probation or parole status, Detective Buchanan was able to turn what started as an ordinary traffic stop into a full-scale search of Mr. Ramirez's car.

precaution could have helped the officer protect himself.[6] *See Landeros*, 913 F.3d at 868 (holding that asking a passenger for identification—a slight intrusion—was not justified in the name of officer safety because "knowing [the passenger's] name would not have made the officers any safer").

The second irrelevant reason the district court gave for denying the motion to suppress was that Detective Buchanan asked the probation-or-parole question at the outset of the stop. (ER-10, 12.) The district court believed the timing of the question was important, writing that threats to an officer's safety are at their highest at that point in a traffic stop generally and were high in this case in particular because Detective Buchanan was in a high-crime and high-gang area approaching someone he recognized from prior contacts as a gang member and former parolee. (ER-9-10.) The court distinguished *Evans* and *Landeros* on the

_____

[6] In analogizing a question about probation or parole to criminal history checks, the district court asserted, without providing any support, that "when an officer looks up the driver's criminal history, the officer will inevitably learn her parole status." (ER-8.) This is not true. Some law enforcement databases do not contain information about whether a person is on probation or parole. *Compare United States v. Hunter*, 554 F. Supp. 3d 632 (E.D. Pa. 2021) (discussing the "Clean N.C.I.C." database, which provides information about the validity of a person's driver's license and whether he has outstanding warrants), *and Matthews v. Las Vegas Metropolitan Police Dep't*, Case No. 2:18-cv-00231-RFB-DJA, 2021 WL 356235, at *7 (D. Nev. Feb. 1, 2021) (describing check of local databases), *with* Bridget A. Fahey, *Data Federalism*, 135 Harv. L. Rev. 1007, 1022 (2022) (discussing the Interstate Identification Index database (which collects information about arrests, criminal histories, and fingerprints), and the NCIC database (which includes information about parole).

basis that there was no information that the stops in those cases had occurred in a similarly dangerous area. (ER-13.)

One of the problems with the Court's reasoning is that it is just as likely that Detective Buchanan asked about probation or parole at the outset of the traffic stop because he was more interested in investigating general criminality than he was in pursuing citations for traffic offenses. Indeed, the detective went on to ask whether and how Mr. Ramirez checked in with his parole officer; information that has no tie to officer safety.

More importantly, even assuming that the general threat level to a police officer is high at the beginning of a traffic stop,[7] even crediting that Detective Buchanan recognized Mr. Ramirez and remembered those facts about him, and even accepting that those facts gave Detective Buchanan reason to be on heightened alert, the analysis does not change. The questions or demands an

---

[7] Emerging data show that police traffic stop safety concerns are overstated. *See* Jordan Blair Woods, *Policing, Danger Narratives, and Routine Traffic Stops*, 117 Mich. L. Rev. 635, 682-83 (2019) (empirical evidence concerning infrequency of traffic-stop violence during routine traffic stops "do[es] not support" conclusion that "police officers are more frequently injured or killed during [routine traffic stops] compared to other police settings"); David D. Kirkpatrick, et al., *Why Many Police Traffic Stops Turn Deadly,* New York Times Magazine (Oct. 31, 2021) (discussing investigation into killings during traffic stops by police, disproportionately of Black drivers, "follow[ing] from an overstatement, ingrained in court precedents and police culture, of the danger that vehicle stops pose to officers."), available at https://www.nytimes.com/2021/10/31/us/police-traffic-stops-killings.html.

officer makes—even when on high alert for his safety—must still relate to officer safety in order to be upheld under that justification. And here, again, the answer to the question Detective Buchanan asked Mr. Ramirez in no way did so.

To the extent the district court was suggesting that Detective Buchanan's question was justified as a way of confirming Mr. Ramirez's identity, this reasoning too is unfounded. (*See* ER-12 ("Accordingly, confirming at the outset of the traffic stop that Ramirez was *the* parolee he had previously encountered allowed Officer Buchanan to better asses the danger posed by the traffic stop." (emphasis added)).) First, the question wasn't geared toward that: Detective Buchanan did not ask whether Mr. Ramirez was *the* former parolee he had interacted with two years earlier. He asked Mr. Ramirez whether he was on "probation or parole." Second, there is no evidence in the record that Detective Buchanan recalled Mr. Ramirez as having posed a safety threat to him from their contacts two years prior. At best, Detective Buchanan's thinking appears to have been that since Mr. Ramirez previously was on parole, it was possible he still was on parole or that he was on probation or parole for a new crime and so maybe Detective Buchanan would be able to search his car without suspicion of wrongdoing. This is, of course, unlawful.

For all of these reasons, the district court erred in holding that Detective Buchanan was justified about inquiring into Mr. Ramirez's probation and parole status during the traffic stop in the name of officer safety.

Because Detective Buchanan's probation-or-parole question was not justified by officer safety, the government is left only with its argument that he had independent reasonable suspicion to ask that question. As noted, *supra*, the district court did not decide this question, and so this Court could remand for the district court to address that question in the first instance. *See Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018) (appellate courts are courts "of review, not of first view").

If this Court does reach the question, however, it should conclude that Detective Buchanan did not have independent reasonable suspicion of criminal activity justifying asking Mr. Ramirez whether he was on probation or parole. Reasonable suspicion "exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc). Here, the government argued below that the following facts amounted to reasonable suspicion that allowed Detective Buchanan to ask whether Mr. Ramirez was on probation or parole: 1) Detective Buchanan recognized the driver as an individual who previously had been on parole; 2)

24

Detective Buchanan knew Mr. Ramirez was "a gang member in a high crime and gang activity areas"; and 3) "Mr. Ramirez was driving in a manner consistent with attempting to evade police contact." (ER-83; *see also* ER-85-86.)

The problem for the government is that the reasonable suspicion inquiry does not ask whether the officer had reasonable suspicion of *some fact* about a motorist that allows inquiry into that fact. The reasonable suspicion inquiry requires a particularized suspicion that "*criminal activity* may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968) (emphasis added); *see also United States v. Cortez*, 449 U.S. 411, 417-18 (1981) ("[T]he detaining officers must have a particularized and objective basis for suspecting the particular person stopped of *criminal activity*." (emphasis added)). Being on probation or parole is not a crime. Even assuming the factors the government identified were enough to establish reasonable suspicion of criminal activity,[8] the government never explained how a question about probation or parole related to an investigation into that activity. It hasn't done that because the question didn't relate to such an investigation. Detective Buchanan's question was not targeted at investigating a justified belief

_____

[8] Notably, Detective Buchanan testified at the hearing that he was not aware whether Mr. Ramirez saw him during the pursuit prior to him activating his lights and siren. (ER-180-81.) Moreover, "presence in a high-crime area cannot alone provide reasonable suspicion" that a person has committed or is about to commit a crime. *United States v. Diaz-Juarez*, 299 F.3d 1138, 1142 (9th Cir. 2002).

that criminal activity was afoot. It was a fishing expedition into generalized criminality that, luckily for him in this instance, gave him the unfettered ability to search Mr. Ramirez and his car without suspicion. The Fourth Amendment prohibits such conduct. This Court should remand with instructions to vacate Mr. Ramirez's conviction and grant the motion to suppress.

**B.** **This Court Should Remand to the District Court to Conform the Written Judgment to the Oral Pronouncement of Sentence.**

Because the District Court erred in denying Mr. Ramirez's motion to suppress, the Court need not consider the fact that the oral pronouncement of sentence does not match the written judgment. In case the Court does reach this issue, however, it should remand so the district court can correct this error.

### 1. Standard of Review

The standard of review should be *de novo*. This Court has not clearly ruled on the standard of review applicable when there is a direct conflict between the written judgment and the oral pronouncement of sentence. However, this Court has *sua sponte* remanded a case to correct the judgment to conform to the oral pronouncement of sentence made in the presence of the defendant. *See, e.g.*, *United States v. Hicks*, 455 F.2d 329, 330 (9th Cir. 1972) (per curiam) (remanding for correction of written judgment that differed from oral pronouncement of sentence even though "irregularity [was] not noted by either party"). Further, because Mr. Ramirez could not have anticipated that the judgment would not

conform to the oral pronouncement of sentence, he did not have an opportunity to preserve a claim of error to the wording of the judgment and should not be prejudiced by the absence of an objection at sentencing. *See* Fed. R. Crim. P. 51(b). For these reasons, the standard of review is effectively *de novo*.

### 2. Analysis

This Court has held that "[w]hen there is a discrepancy between an unambiguous oral pronouncement of a sentence and the written judgment, the oral pronouncement controls." *United States v. Fifield*, 432 F.3d 1056, 1059 n.3 (9th Cir. 2005). When such a direct conflict exists, "[t]he only sentence that is legally cognizable is the actual oral pronouncement in the presence of the defendant." *United States v. Munoz-Dela Rosa*, 495 F.2d 253, 256 (9th Cir. 1974).

Here, two special conditions in the written judgment directly conflict with the district court's oral pronouncement, with bolded text indicating material language present in the written judgment but not the oral pronouncement:

| Special Condition Number | Oral Pronouncement | Written Judgment |
|---|---|---|
| 4 | The defendant "shall participate in outpatient substance abuse treatment and counseling programs, as directed by the probation officer."<br><br>(ER-19.) | "The defendant shall participate in an outpatient substance abuse treatment and counseling program **that includes urinalysis, breath or sweat patch testing,** as directed by the Probation Officer. **The defendant shall abstain from using alcohol and illicit drugs, and from abusing prescription medications during the period of supervision."** |

| | | |
|---|---|---|
| | | (ER-23.) |
| 6 | "Defendant shall not associate with anyone known to him to be a member of the Alley Boys gang or other participants in the . . . Alley Boys gang's criminal activities, with the exception of family members."<br><br>(ER-19.) | "The defendant shall not associate with anyone known to the defendant to be a member of the Alley Boys Gang and others known to the defendant to be participants in the Alley Boys Gang's criminal activities, with the exception of the defendant's family members. **The defendant may not wear, display, use or possess any gang insignias, emblems, badges, buttons, caps, hats, jackets, shoes, or any other clothing that defendant knows evidence affiliation with the Alley Boys Gang, and may not display any signs or gestures that defendant knows evidence affiliation with the Alley Boys Gang.**<br><br>(ER-23.) |

Because Mr. Ramirez's legally cognizable sentence is the oral pronouncement, this Court must vacate the judgment and remand with instructions to (1) strike the portions of Special Condition Number 4 that relate to urinalysis, breath, or sweat patch testing, and that prohibit Mr. Ramirez from using alcohol and illicit drugs, and from abusing prescription medications; and (2) strike the portion of Special Condition Number 6 pertaining to gang-affiliated clothing or gestures. *See United States v. Jones*, 696 F.3d 932, 938 (9th Cir. 2012).

Notably, appeal of this issue is not barred by the appellate waiver in Mr. Ramirez's plea agreement because Mr. Ramirez is not challenging "the procedures and calculations used to determine and impose any portion of the sentence." (ER-

282.)  Rather, he seeks only to conform the written judgment to the sentence actually imposed.  For the same reason, he is not attacking "conditions of probation or supervised release *imposed* by the Court."  (ER-283 (emphasis added).)  He merely seeks to conform the written judgment to the sentence actually imposed—that is, orally pronounced—by the district court.  Therefore, no provision of the plea agreement bars this Court from vacating and remanding to correct the written judgment.

## VII. CONCLUSION

The district court erred in denying Mr. Ramirez's motion to suppress and in issuing a written judgment that differs from the oral pronouncement of sentence. The Court should remand with directions that the motion be granted.  In the alternative, the Court should remand with instructions to conform the written judgment to the oral pronouncement of sentence.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: December 2, 2022        By  */s/ Deborah E. Gonzalez*
                              DEBORAH E. GONZALEZ
                              Deputy Federal Public Defender
                              Attorney for Defendant-Appellant

29

## CERTIFICATE OF RELATED CASES

Counsel for appellant certifies that she is unaware of any pending case presenting an issue related to those raised in this brief.

DATED: December 2, 2022

*/s/ Deborah E. Gonzalez*
DEBORAH E. GONZALEZ

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1, I certify that this opening brief is proportionally spaced, has a typeface of 14 points or more, and contains approximately 6,312 words.


DATED: December 2, 2022          */s/ Deborah E. Gonzalez*
                                 DEBORAH E. GONZALEZ